IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MARCUS E. MALONE,<br>    Plaintiff,<br><br>         v.<br><br>AARON C. JOHNSON, *individually and as an officer of the Marietta Police Department*; BRIAN WASHINGTON, *individually and as an officer of the Marietta Police Department*; JOSEPH VITTETOE, *individually and as an officer of the Marietta Police Department*; JACOB HUGHES, *individually and as an officer of the Marietta Police Department*; and CITY OF MARIETTA,<br>    Defendants. | Civil Action No.<br>1:22-cv-00555-SDG |

## <u>OPINION AND ORDER</u>

This matter is before the Court on the Motion to Dismiss [ECF 40] filed by Defendant City of Marietta, Georgia (the City), and the Motion for Judgment on the Pleadings [ECF 42] filed by Defendants Aaron C. Johnson, Brian Washington, Joseph Vittetoe, and Jacob Hughes (the Individual Defendants). For the reasons stated below, both motions are **GRANTED IN PART** and **DENIED IN PART**.

## I.      Background

### A.      Factual Allegations

This suit arises from a traffic stop of Plaintiff Marcus E. Malone by Johnson, who is an officer with the Marietta Police Department.[1] Malone is an African-American male.[2] For purposes of considering Defendants' motions, the following allegations are accepted as true and are construed in the light most favorable to Malone.[3]

At approximately 5:17 pm on February 9, 2020, Johnson pulled Malone over near Cobb Parkway.[4] Johnson informed Malone that he was being stopped because Malone's car was "weaving a little bit" and hit the line, and the center brake light was out.[5] Washington, Vittetoe, and Hughes—all Marietta Police Department officers—assisted in the traffic stop.[6] Malone was wearing a pair of

---

[1]   *See generally* ECF 38 (SAC).

[2]   *Id.* ¶ 39.

[3]   *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 (11th Cir. 1999).

[4]   *Id.* ¶ 40.

[5]   *Id.* ¶ 41. *See also id.* ¶ 101.

[6]   *Id.* ¶ 42.

denim shorts underneath "athletic training pants"—sweatpants—when he was pulled over.[7] The shorts were zipped, but unbuttoned.[8]

Malone asserts that there are body and dash camera recordings of the traffic stop, but that he was only provided with an *edited* copy of Johnson's body and dash cam videos.[9] Malone alleges that a portion of Johnson's body cam recording was muted to conceal how the officers were going to improperly search Malone and his car.[10] During the approximately seven-and-one-half minutes that Johnson's body cam was muted, Malone contends the following events took place:

Having already approached the car twice, Johnson approached for a third time and asked Malone to exit the vehicle. Malone complied. Johnson asked if he could search Malone for weapons; Malone refused. After a short, continued exchange, Johnson again asked if he could search Malone for weapons. Malone consented to a weapons search and stated that Johnson could "pat" him. Johnson directed Malone to put his hands on the truck of his car and Johnson proceeded with the search. Washington, Vittetoe, and Hughes were "within reaching

---

7    *Id.* ¶ 72.

8    *Id.* ¶ 73.

9    *Id.* ¶¶ 44–45, 56–57.

10    *Id.* ¶ 58.

distance" of Malone during the search.[11] Despite Malone's consent only to a pat-down, over the course of approximately six minutes Johnson went through all of Malone's jacket and pants pockets, turning the pants pockets inside out; pulled down Malone's pants to reveal the unbuttoned denim shorts; went through all of the shorts pockets, turning them inside out; touched Malone's buttocks and crotch through the shorts on two separate passes; unzipped the shorts and searched inside them; searched Malone's socks; and searched inside Malone's shoes using a flashlight. Malone never consented to a full-scale search of his person.[12]

During the search, Washington repeatedly asked Malone what was stuffed in his pants, to which Malone responded there was nothing. The officers informed Malone that he appeared extremely nervous and that wearing the shorts under his sweatpants appeared suspicious. Washington asked Malone about his "drug of choice" and what he had to drink that day. Malone stated that he does not do drugs or drink. Malone also stated that he had no drugs in the car in response to Washington's inquiries. Johnson and Washington insisted that there were drugs in Malone's underwear despite Malone's assertions that there was nothing in his pants. The officers suggested that Malone would have to take his pants off and

---

[11]    *Id.* ¶ 61.

[12]    *Id.* ¶¶ 69, 82–85.

that they would reach inside his underwear.[13] The officers found no weapons or illegal drugs during the search of Malone.[14]

After completing the search of Malone himself, Johnson asked to search the car.[15] Given the behavior of the officers, Malone felt unsafe and as though he had no option to refuse the search.[16] He was concerned that he would be arrested or harmed if he asserted his rights and refused to comply with the officers' requests.[17] Malone did not believe he was free to leave.[18] Johnson and Vittetoe searched Malone's car while Washington and Hughes detained Malone.[19] Malone alleges that he did not voluntarily consent to the search.[20] During the car search, Johnson commented to Vittetoe that certain items looked "promising."[21] When an item

---

[13]  ECF 21; ECF 38, ¶ 61.

[14]  ECF 38, ¶ 86.

[15]  *Id.* ¶ 61.

[16]  *Id.* ¶¶ 61.o., 63.

[17]  *Id.* ¶¶ 63–65.

[18]  *Id.* ¶¶ 66, 89.

[19]  *Id.* ¶ 87.

[20]  *Id.* ¶ 88.

[21]  *Id.* ¶ 90.

turned out not to be illegal drugs, Johnson complained to Vittetoe that the item had "got me excited."[22] The officers found no weapons or illegal drugs in the car.[23]

Ultimately, Johnson issued a warning for Malone's malfunctioning brake light and his alleged "weaving."[24] Although Johnson supposedly suspected that Malone had been drinking or using drugs, the officers did not perform any field sobriety tests.[25] Nor did the officers ever read Malone his *Miranda* rights.[26]

## B.   Procedural History

On April 15, 2020, Malone filed a complaint in the State Court of Cobb County, Georgia against the City of Marietta based on the traffic stop.[27] On January 21, 2021, the state court judge granted the City's motion to dismiss.[28] Malone did not appeal that order.[29] Malone initiated this action on February 9, 2022.[30] With the

---

[22]   *Id.* ¶ 91.

[23]   *Id.* ¶ 92.

[24]   *Id.* ¶ 101.

[25]   *Id.* ¶¶ 103–04.

[26]   *Id.* ¶ 111.

[27]   ECF 40-3.

[28]   *Id.*

[29]   ECF 40-1, at 5. Although this fact is not alleged in Malone's pleading, he does not appear to contest its accuracy. ECF 46, at 23–24.

[30]   ECF 1.

consent of Defendants,[31] Malone filed a Second Amended Complaint (the SAC) on July 10, 2022.[32] The SAC asserts (1) a Section 1983 claim for unreasonable search and seizure under the Fourth Amendment against the Individual Defendants in their individual capacities; (2) a state-law claim for false imprisonment against the Individual Defendants in their individual and official capacities; and (3) a Section 1983 claim against the City for failure to train.[33] The City moved to dismiss and the Individual Defendants moved for judgment on the pleadings.[34] Both motions have been fully briefed and are ripe for consideration.

## II.     Applicable Legal Standard

### A.     Motion to Dismiss/Motion for Judgment on the Pleadings

When a defendant asserts that a pleading fails to state a claim, the standard of review is essentially the same whether the defendant moves under Fed. R. Civ. P. 12(b)(6) or 12(c): The Court must accept all well-pleaded facts as true and view them in the light most favorable to the nonmoving party. *Scott v. Taylor*, 405 F.3d 1251, 1253 (11th Cir. 2005) (concerning motion for judgment on the pleadings);

---

[31]   ECF 37.

[32]   ECF 38.

[33]   *Id.* at ¶¶ 112–211.

[34]   ECF 40 (City's MTD); ECF 42 (Individual Defs.' MfJP).

*Bryant*, 187 F.3d at 1274 (11th Cir. 1999) (concerning Rule 12(b)(6) motions). To withstand a motion to dismiss for failure to state a claim, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint is plausible on its face when a plaintiff pleads sufficient factual content for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Id.* (citing *Twombly*, 550 U.S. at 556). "Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Hart v. Hodges*, 587 F.3d 1288, 1294 n.4 (11th Cir. 2009) (quoting *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)).

## B. Extrinsic Evidence

Although the SAC refers to the body and dash camera videos recorded by Johnson,[35] those videos are not part of the record. Malone alleges that he was only provided with edited versions of those recordings in response to his open records requests.[36] Malone also alleges that body and dash camera recordings were taken

---

[35] ECF 38, ¶¶ 52–53.

[36] *Id.* ¶ 44.

by Washington, Vittetoe, and Hughes, but that he was never provided copies of those recordings in response to his open records requests.[37] However, the Individual Defendants seek to rely on the body camera recordings of Washington and Hughes in support of their motion for judgment on the pleadings.[38] Although Malone contends that the recordings are not incorporated by reference into the SAC, he does not appear to object to the Court's consideration of them in connection with Defendants' motions.[39]

This Court has discretion to consider the recordings in connection with Defendants' motions. *Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018) ("[W]e may also consider documents attached to the motion to dismiss if they are referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity.") (citations omitted); *Adamson v. Poorter*, No. 06-15941, 2007 WL 2900576, at *2 (11th Cir. Oct. 4, 2007) ("[A] document attached to the pleadings as an exhibit may be considered if it is central to the plaintiff's claim and the authenticity of the document is not challenged.") (citations omitted). Here, the Court will consider the Washington and Hughes body camera recordings since

---

[37]   *Id.* ¶ 45.

[38]   ECF 21; ECF 50.

[39]   ECF 46, at 3 n.3.

they reflect the traffic stop that is the subject of the SAC and Malone does not contest their authenticity. The Court is, however, cognizant of the fact that Malone alleges there was much more footage of the traffic stop than is contained in the current record. Having reviewed the Washington and Hughes recordings, nothing they depict plainly contradicts the allegations in the SAC. *Cantrell v. McClure*, No. 2:17-cv-141-RWS, 2018 WL 11170098, at *1 (N.D. Ga. Mar. 12, 2018) (stating that, if "the record includes a video which the parties concede is authentic and accurate . . . the court views 'allegations of the complaint as true only to the extent that they are not contradicted by video evidence'") (quoting *Kass v. City of New York*, 864 F.3d 200, 206 (2d Cir. 2017)).

## III.   Discussion

### A.   Res Judicata Does Not Bar Malone's Claims.

The City argues that Malone's claims are barred by res judicata because of the state court's order granting the City's motion to dismiss Malone's initial lawsuit.[40] The Individual Defendants make the same argument.[41] Malone responds that the state court's decision was not on the merits, so res judicata cannot apply. Malone is correct.

---

[40]   ECF 40-1, at 19–25.

[41]   ECF 42-1, at 15–22.

The state court's January 21, 2021 order (the January 21 Order) contained four separate grounds for dismissing Malone's lawsuit. That court concluded that (1) Malone had failed to properly serve the City; (2) Malone failed to provide ante litem notice to the City; (3) the claims were barred by sovereign immunity; and (4) the complaint failed to state a claim.[42] "Under the Full Faith and Credit Act, a federal court is required to give res judicata effect to state court judgments only to the extent that the courts of the state in which the judgment was entered would do so." *Cable Holdings of Battlefield, Inc. v. Cooke*, 764 F.2d 1466, 1473 (11th Cir. 1985) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75 (1984)).

Under Georgia law,

> A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside.

O.C.G.A. § 9-12-40. For res judicata to act as a bar to subsequent litigation then, the identity of the cause of action and the parties must be the same and there must have been a "previous adjudication on the merits by a court of competent jurisdiction." *Sampson v. Georgia Dep't of Juv. Just.*, 328 Ga. App. 733, 736 (2014)

---

[42] ECF 40-3.

(citations omitted). When the merits of a case were not and could not have been determined "under a proper presentation and management of the case," res judicata is not an available defense under Georgia law. *Piedmont Cotton Mills, Inc. v. Woelper*, 269 Ga. 109, 110 (1998). A lack of jurisdiction precludes consideration of the merits of a claim. *Id.* at 111 (citations omitted). And the state court here lacked jurisdiction to rule on the merits of Malone's claim, so the January 21 Order can have no preclusive effect under Georgia law. "An order granting an O.C.G.A. § 9-11-12(b)(5) motion to dismiss due to insufficiency of service of process is a matter of abatement only, and not a judgment on the merits." *Palmer v. Constantin*, 256 Ga. App. 233, 234 (2002).

In *Wellman v. JP Morgan Chase Bank, NA*, the trial court dismissed a complaint with prejudice for failure to state a claim even though the court had concluded the case was subject to dismissal "based on insufficient service of process and lack of personal jurisdiction." 347 Ga. App. 118, 119–20 (2018). The Georgia Court of Appeals reversed the dismissal with prejudice, concluding that "until service is perfected or waived, there is no 'pending suit,' and the trial court has no jurisdiction or authority to enter any ruling in the case except for a ruling dismissing the case for lack of jurisdiction." *Id.* at 120 (quoting *Williams v. Resurgens & Affiliated Orthopaedists*, 267 Ga. App. 578, 580 (2004)). Since the

*Wellman* trial court lacked jurisdiction to rule on the merits of the plaintiff's claim, dismissal with prejudice was improper. *Id.*

Likewise, here, the state court itself concluded that it could not acquire jurisdiction over the City because Malone never perfected service.[43] "If service is never perfected and is not waived, the court does not acquire jurisdiction over the defendant and the suit is void, since the filing of a complaint without perfecting service does not constitute a pending suit." *Tavakolian v. Agio Corp.*, 283 Ga. App. 881, 883 (2007) (quoting *Thorburn Co. v. Allied Media of Ga.,* 237 Ga. App. 800, 802 (1999)). The state court was required under Georgia law to decide this jurisdictional issue first. *Montague v. Godfrey*, 289 Ga. App. 552, 557–58 (2008), *overruled on other grounds by Giles v. State Farm Mut. Ins. Co.*, 330 Ga. App. 314, 319 n.2, 319–20 (2014). Having concluded that Malone did not perfect service on the City, the state court lacked jurisdiction to rule on whether Malone had failed to state a claim or any other substantive issue—just as the trial court in *Wellman* had. Whether they are viewed as dicta, alternative rulings, or simply extraneous, the state court's statements in the January 21 Order regarding ante litem notice, sovereign immunity, and failure to state a claim could not have been on the merits

---

43   ECF 40-3, at 4.

because that court was without the authority to rule on anything after it concluded

it lacked jurisdiction over the City.

As the Georgia Court of Appeals wrote in *Montague*:

> Having ruled as it did that dismissal was appropriate on
> that ground [insufficient service of process], the trial
> court lacked jurisdiction to proceed to rule upon whether
> the complaint should be dismissed on the merits under
> O.C.G.A. § 9-11-12(b)(6). Because dismissal was
> appropriate only under O.C.G.A. § 9-11-12(b)(5), the
> dismissal of Montague's complaint against Camilo
> cannot be treated as an adjudication on the merits. It
> follows that principles of res judicata do not apply to bar
> Montague's respondeat superior claim against Baker
> Imported.

289 Ga. App. at 558 (citation omitted). Because the January 21 Order was not a

decision on the merits, it cannot serve as a res judicata bar to Malone's claims.

## B.    Section 1983 Claims

Section 1983 does not itself create any substantive rights. *Baker v. McCollan*,

443 U.S. 137, 140, 144 n.3 (1979). Instead, it is a method used to vindicate existing

federal rights. *Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *Baker*, 443 U.S. at 144

n.3. Both individuals and municipalities are subject to suit under Section 1983.

*Floyd v. City of Miami Beach*, 730 F. App'x 838, 841 (11th Cir. 2018). Malone asserts

that the Individual Defendants violated his Fourth Amendment rights because

their search of him and his car was unreasonable. Malone also contends that the

City violated his Fourth Amendment rights because of its failure to train its police officers on conducting lawful frisks or obtaining consent to conduct searches.

### 1.   The Individual Defendants

According to the SAC, Johnson indicated that he stopped Malone because he believed Malone was drunk or on drugs, and unsafe to operate a vehicle.[44] Despite that expressed belief, the Individual Defendants never administered any field sobriety tests and let Malone return to his car less than 25 minutes after the initial stop.[45] The SAC indicates that the extended traffic stop was a pretext to search for illegal drugs and effect an arrest.[46] Count I pleads that the Individual Defendants, in their individual capacities, did not have justification to search Malone or his car and unreasonably extended the duration of Malone's detention for matters unrelated to the initial traffic stop.[47] Further, the SAC alleges that the physical search of Malone exceeded that necessary to ensure officer safety and was

---

[44]   ECF 38, ¶¶ 115–16.

[45]   *Id.* ¶¶ 117–18.

[46]   *Id.* ¶¶ 132–34.

[47]   *Id.* ¶¶ 122–25.

therefore unreasonable.[48] The Individual Defendants claim that they are entitled to qualified immunity.[49]

### i.   Qualified Immunity

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This is known as qualified immunity. "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). The parties do not dispute that the Individual Defendants were acting within their discretionary authority.[50] Accordingly, the burden is on Malone to show that they are not entitled to immunity.

"To overcome the defense of qualified immunity, [a plaintiff] must show that the officer[ ]: (1) violated federal law (2) that was clearly established at the

---

[48]   *Id.* ¶¶ 129–31.

[49]   ECF 42-1, at 7–15.

[50]   *Id.* at 7–8; ECF 47, at 18–19.

relevant time." *Pullen v. Osceola Cnty.*, 861 F. App'x 284, 289 (11th Cir. 2021) (citing *Harbert Int'l, Inc. v. James,* 157 F.3d 1271, 1281 (11th Cir. 1998) (per curiam)).

### *a.* **Constitutional violation**

The Individual Defendants contend that there was no constitutional violation because they had reasonable suspicion and probable cause to believe Malone may have been engaged in criminal activity.[51] But Malone does not contend that his constitutional rights were violated because of the initial traffic stop. He asserts that (1) the search of his person was unreasonable because he consented only to a *Terry* frisk, (2) the search of his vehicle was unreasonable because he did not voluntarily consent to it, and (3) the length of his detention was unreasonable given that it was extended because of the impermissible searches.[52]

Based on the allegations in the SAC and the Individual Defendants' Answer, the Court cannot conclude that the Individual Defendants had either reasonable suspicion or probable cause to conduct the extensive physical search of Malone or that Malone voluntarily consented to the search of his car, both of which contributed to the length of his detention. The Individual Defendants' arguments

---

[51]   ECF 42-1, at 8–13.

[52]   ECF 38, ¶¶ 122–31.

to the contrary rely on a view of disputed facts that favors them instead of the non-movant. This is improper. *Scott*, 405 F.3d at 1253.

Johnson specifically informed Malone that he wanted to search him for weapons and Malone consented only to that limited search (which can be heard on one of the body camera recordings).[53] Under *Terry v. Ohio*,

> A search for weapons in the absence of probable cause to arrest . . . must, like any other search, be strictly circumscribed by the exigencies which justify its initiation. Thus it must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby, and may realistically be characterized as something less than a "full" search, even though it remains a serious intrusion.

392 U.S. 1, 25–26 (1968) (citation omitted). *See also United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001) ("It is well established that officers conducting a traffic stop may take such steps as [are] reasonably necessary to protect their personal safety. This includes conducting a protective search of the driver, the passengers, and the vehicle. The officer may seize any contraband, including weapons, in plain view. . . .") (citations and internal quotation marks omitted). But a search exceeding the scope of *Terry* can be a constitutional violation.

---

[53]   ECF 21; ECF 38, ¶¶ 61, 82–83.

Under the facts alleged, Malone consented to a limited *Terry* search and the Individual Defendants could not exceed the scope of such frisks without probable cause. "In the name of investigating a person who is no more than suspected of criminal activity, the police may not carry out a full search of the person or of his automobile or other effects." *Floyd*, 730 F. App'x at 842 (quoting *Florida v. Royer*, 460 U.S. 491, 499 (1983)). Malone disputes that his tail light was out and that he was weaving,[54] and nothing in the body camera recordings shows Malone or his car before the stop.[55] At this stage, the Court cannot conclude that the Individual Defendants had a basis to search Malone independent of the consented-to "pat-down." Malone has therefore alleged a constitutional violation resulting from the Individual Defendants' physical search of him.

And while the Individual Defendants argue that Malone consented to the search of his car,[56] the SAC specifically asserts that Malone's consent was not voluntary under the circumstances.[57] Nor is there anything in the body camera recordings that clearly contradicts those allegations. "A consensual search is

---

[54]   ECF 38, ¶ 51.

[55]   ECF 21.

[56]   ECF 42-1, at 13.

[57]   ECF 38, ¶¶ 88, 127.

constitutional if it is voluntary; if it is the product of an essentially free and unconstrained choice." *Purcell*, 236 F.3d at 1281 (citations and internal quotation marks omitted). Malone contends that he was not free to decline the search of his car under these facts. Consent depends on the totality of the circumstances, *id.*, and is not appropriately decided at this stage—particularly in light of the existence of other recordings of the incident that are not in the record. Malone has sufficiently pleaded a constitutional violation in connection with the search of his car.

### b.    Clearly Established

The Individual Defendants also argue that there was no violation of clearly established law.[58] For this second prong of the qualified immunity analysis, the Court must "determine whether the right was clearly established such that a reasonable official would understand that what he is doing violates that right." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (quoting *Bashir v. Rockdale Cnty.*, 445 F.3d 1323, 1327 (11th Cir. 2006)). Cases from the United States Supreme Court, Eleventh Circuit, and Georgia Supreme Court establish whether the law, at the time of the violation, provided "fair and clear notice" to a reasonable officer that his actions were unconstitutional. *Bashir*, 445 F.3d at 1331 (citation omitted).

---

[58]   ECF 42-1, at 14–15.

"Exact factual identity with a previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law." *Coffin*, 642 F.3d at 1013 (citations omitted).

As the case law cited above demonstrates, *Terry* has been the law for over half a century and makes clear the extent of the search that could permissibly have been conducted on Malone under the facts alleged. The Eleventh Circuit's ruling in *Floyd* (and the reported cases on which it relies) was issued well before Malone's traffic stop. At the time, it was well-established that the Individual Defendants could not carry out a full search of Malone or his car "[i]n the name of investigating a person who is no more than suspected of criminal activity." 730 F. App'x at 842. The Individual Defendants are not entitled to qualified immunity at this stage.

### 2.    The City

The SAC asserts a cause of action (Count IV) against the City for municipal liability under Section 1983 for failure to train.[59] In support of that claim, the SAC alleges that Malone was searched and detained for reasons that had nothing to do with Johnson's alleged suspicion that he was impaired or assertion about the broken tail light.[60] The pleading states facts supporting the allegations that the

---

59   *Id.* ¶¶ 202–08.

60   *Id.* ¶¶ 183–84.

Individual Defendants had no justification to search Malone or his vehicle, or to extend the length of time he was detained.[61] Before Malone was stopped, the City was allegedly aware of a wide-spread pattern of similar incidents in which members of the Marietta Police Department would conduct illegal searches in the hope of finding contraband and making arrests.[62] The Individual Defendants purportedly were not adequately trained by the City on lawful frisks under the Fourth Amendment or on obtaining consent to search individuals and vehicles.[63] As a result, Malone asserts the City violated his constitutional rights.[64]

### i.    Custom or Policy

To impose municipal liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690 (1978), a plaintiff must show "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). *See also Pilgrim v. City of Atlanta*, Civ. A. No. 1:21-cv-

---

[61] *Id.* ¶¶ 185-88.

[62] *Id.* ¶ 199.

[63] *Id.* ¶¶ 202–03.

[64] *Id.* ¶¶ 204–05.

2472-TWT, 2022 WL 797584, at *4 (N.D. Ga. Mar. 16, 2022) (citing *McDowell*). As

discussed above, Malone has alleged a violation of his constitutional rights. But a

local government cannot be subjected to *respondeat superior* liability. It "may not be

sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*,

436 U.S. at 694. Rather, a plaintiff must show a relevant custom or policy caused

his injury.

To demonstrate this, a plaintiff can

> (1) identify[ ] an official policy; (2) identify[ ] an
> unofficial custom or widespread practice that is so
> permanent and well settled as to constitute a custom and
> usage with the force of law; or (3) identify[ ] a municipal
> official with final policymaking authority whose
> decision violated the plaintiff's constitutional rights.

*Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*, No. 21-10619, 2022 WL 4100687,

at *3 (11th Cir. Sept. 8, 2022) (citing *Cuesta v. Sch. Bd. of Miami-Dade Cnty.*, 285 F.3d

962, 966–68 (11th Cir. 2022)). The City argues that Malone has not stated a claim

because he did not allege a policy that caused the alleged deprivation of his

constitutional rights.[65] The policy Malone identifies is the widespread "pattern of

similar incidents in which police officers of the Marietta Police Department would

---

[65]   ECF 40-1, at 9–10.

stop and conduct unlawful searches . . . in the hope of unlawfully finding contraband and making arrests."[66]

The problem with Malone's position is that he makes the necessary allegation on information and belief and pleads no supporting facts other than his own traffic stop.[67] The SAC identifies no other incidents that fit this alleged policy.[68] The plaintiff must "show a persistent and wide-spread practice." *Depew v. City of St. Marys, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986). Random acts and isolated incidents are insufficient. *Id.* Here, Malone's pleading is simply not sufficiently detailed to make the allegations of a widespread practice plausible. *Twombly*, 550 U.S. at 570; *Am. Dental Ass'n*, 605 F.3d at 1289.

### ii.    Failure to Train

The City also argues that Malone has not adequately alleged that its failure to train constituted deliberate indifference.[69] To establish deliberate indifference, "a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate

---

66   ECF 38, ¶ 199.

67   *Id.*

68   *See generally* ECF 38.

69   ECF 40-1, at 10–11.

choice not to take any action." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). But the only instance to which the SAC points that supposedly shows a need to train is the one in which Malone himself was involved. Generic allegations made on information and belief that the City knew of a widespread practice are not enough to show that the City was on notice of a need to train its officers about the proper conduct of Fourth Amendment searches.

Malone contends that the City's refusal to reveal the identity of the officers or all recordings in response to his open records requests, and alleged alteration of the recordings from Johnson's cameras, demonstrate both the policy and necessary indifference.[70] While such allegations are concerning and might be sufficient to plead misconduct in connection with Malone's traffic stop, they do nothing to demonstrate a practice that would have put the City on notice of the need to train. A single incident of unconstitutional activity is generally insufficient to impose *Monell* liability. *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823–24 (1985); *Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1330 n.6 (11th Cir. 2003) (en banc).

---

[70]   ECF 46, at 17–18.

### C.      False Imprisonment & Punitive Damages

Count II of the SAC asserts claims for false imprisonment under Georgia law against the Individual Defendants in both their official and individual capacities.[71] The official capacity claims are in effect claims against the City rather than the Individual Defendants.[72] *Gilbert v. Richardson*, 264 Ga. 744, 750 (1994). Count III of the SAC seeks punitive damages for the false imprisonment against the Individual Defendants in their individual capacities only.[73]

### 1.      Individual Capacity Claims

The Individual Defendants assert that Malone was lawfully detained, so he cannot state a claim for false imprisonment. They also contend they are entitled to official immunity. As indicated above, the Court cannot conclude that Malone's detention was proper as a matter of law. But nevertheless the Individual Defendants are entitled to immunity on Malone's state-law claim.

---

[71]   ECF 38, ¶¶ 142–71.

[72]   To the extent the Individual Defendants argue that the official capacity claim is "redundant" of the claims against the City and should be dismissed, ECF 42-1, at 7, this argument is misplaced. The official capacity claim for false imprisonment is a *separate* claim against the City and is not duplicative of the Section 1983 claim against it.

[73]   *Id.* ¶¶ 172–75.

### i.   Malone Stated a Claim for False Imprisonment.

Under Georgia law, false imprisonment is "the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty." O.C.G.A. § 51-7-20. The only elements required to plead the claim are (1) a detention and (2) that was unlawful. *Collier v. Evans*, 199 Ga. App. 763, 764 (1991) (citation omitted). Malone has done just that. The SAC alleges that the Individual Defendants were not justified in searching Malone or his car, and unreasonably detained Malone.[74] Moreover, the fact of Malone's detention is readily apparent from the body camera recordings.[75] Malone has also sufficiently alleged that his detention was unlawful.[76] Malone has therefore stated a claim for false imprisonment. But that is not the end of the inquiry.

### ii.   Official Immunity

Official immunity "protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption." *Murphy v. Bajjani,* 282 Ga. 197, 198 (2007). Such agents can be sued "if they (1) negligently perform a ministerial duty,

---

[74]   ECF 38, ¶¶ 87, 152–55.

[75]   ECF 21.

[76]   *See supra* Section III.B.1.i.a.

or (2) act with actual malice or actual intent to cause injury while performing a discretionary function." *Daniels v. Gordon,* 232 Ga. App. 811, 813 (1998) (citing *Teston v. Collins,* 217 Ga. App. 829, 830 (1995)); *see also Chisolm v. Tippens*, 289 Ga. App. 757, 760 (2008) (citing *Nichols v. Prather,* 286 Ga. App. 889, 896 (2007)). This requires an analysis of the officer's subjective intent. *Croland v. City of Atlanta,* 782 F. App'x 753, 758–59 (11th Cir. 2019) (per curiam) (citing *Jordan v. Mosley,* 487 F.3d 1350, 1357 (11th Cir. 2007)).

Malone concedes that the Individual Defendants were engaged in a discretionary function.[77] Accordingly, he was required to allege that the officers acted with actual malice. *Kidd v. Coates*, 271 Ga. 33, 33 (1999); *Daniels,* 232 Ga. App. at 813. The Georgia Supreme Court has explained that "actual malice. . . denotes 'express malice,' i.e., 'a deliberate intention to do wrong,' and does not include 'implied malice,' i.e., the reckless disregard for the rights or safety of others." *Murphy*, 282 Ga. at 203 (cleaned up) (quoting *Merrow v. Hawkins*, 266 Ga. 390, 391–92 (1996)). A "deliberate intention to do wrong" is "the intent to cause the harm suffered by the plaintiff[ ]." *Id.* It requires "more than harboring bad feelings or ill will about another; rather, ill will must also be combined with the intent to do

---

[77]   ECF 47, at 25.

something wrongful or illegal." *Wyno v. Lowndes Cnty.*, 305 Ga. 523, 531 (2019) (cleaned up). Similarly, an "actual intent to cause injury" means the "actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury. This definition of intent contains aspects of malice, perhaps a wicked or evil motive." *Id.* (quoting *Kidd*, 271 Ga. at 33).

Although the SAC alleges that the Individual Defendants "demonstrated willful misconduct, malice, oppression, and the entire want of care,"[78] that bare allegation is not enough to make Malone's claim of malice plausible. Nor do the body camera recordings bolster that basic assertion. At best, the SAC alleges facts suggesting the Individual Defendants acted with implied malice—recklessly disregarding Malone's rights for the purpose of trying to find illegal drugs or other contraband. Malone has not alleged the actual malice required to overcome official immunity. *Murphy*, 282 Ga. at 203.

Accordingly, the Individual Defendants in their individual capacities are entitled to official immunity as to Malone's false imprisonment claim. This also applies to Malone's punitive damages claim, which depends on the viability of the false imprisonment cause of action. It does not, however, impact Malone's official

---

[78]   *Id.* ¶ 169.

capacity claim against the City: "[T]he official immunity of a public employee does not protect a governmental entity from liability under the doctrine of respondeat superior. A county may be liable for a county employee's negligence in performing an official function to the extent the county has waived sovereign immunity." *Gilbert*, 264 Ga. at 753–54.

### 2.    Official Capacity Claims

"Suits against public employees in their official capacities are in reality suits against the state and, therefore, involve sovereign immunity." *Cameron v. Lang*, 274 Ga. 122, 126 (2001) (citation and internal quotation marks omitted). Under Georgia law, "[t]he doctrine of sovereign immunity . . . protects all levels of governments from legal action unless they have waived their immunity from suit." *Id.* The City argues that it is entitled to sovereign immunity against the false imprisonment claim.[79] Malone counters that the City waived immunity through the purchase of liability insurance.[80]

Municipal corporations, such as the City, are entitled to sovereign immunity under Georgia law. O.C.G.A. § 36-33-1(a). The purchase of insurance, however, can limit that entitlement. If the insurance policy "covers an occurrence for which

---

[79]   ECF 40-1, at 13–18.

[80]   ECF 46, at 20–22.

the defense of sovereign immunity is available," it effects a waiver of immunity to the extent of the limits of that insurance policy. *Id.* The SAC alleges that the City had liability insurance that covered the tortious actions of its police officers, including false imprisonment.[81] The City argues that this is insufficient for Malone to carry his burden, and refers to an endorsement to its liability insurance policy.[82] The City has not, however, placed the full insurance policy in the record nor is it clear whether it has other liability policies that may limit the scope of its entitlement to sovereign immunity. Without the relevant insurance policy, the Court cannot assess the effect of the endorsement. The relevant facts are therefore in dispute and must be construed in Malone's favor at this point.

Although the City argues immunity is a threshold jurisdictional issue that must be decided now,[83] it points to no federal case law in support of that proposition. At this stage, Malone has sufficiently pleaded the existence of an insurance policy that waives the City's immunity. The City remains free to assert its entitlement to sovereign immunity at summary judgment.

---

[81]   ECF 38, ¶ 171.

[82]   ECF 48, at 6.

[83]   *Id.* at 7–8.

The City also suggests that it is entitled to immunity because the Individual Defendants were performing a governmental function.[84] "Municipal corporations shall not be liable for failure to perform or for errors in performing their legislative or judicial powers. For neglect to perform or improper or unskillful performance of their ministerial duties, they shall be liable." O.C.G.A. § 36-33-1(b). This protection is not available if some other form of sovereign immunity waiver applies. *Weaver v. City of Statesboro*, 288 Ga. App. 32, 35 (2007). Since Malone has carried his initial burden to show a waiver of the City's immunity because of the existence of insurance, the City cannot avail itself of this protection.

The City's last two arguments are readily dispatched. Ante litem notice under O.C.G.A. § 36-33-5 is not required when the alleged injury was caused by an intentional tort. *West v. City of Albany*, 300 Ga. 743, 745–47. *See also id.* at 747 (O.C.G.A. § 36-33-5's "plain language demonstrates it applies only to damages caused by negligence, not intentional acts."). False imprisonment is an intentional tort. Finally, O.C.G.A. § 36-33-3, which provides that municipal corporations are not liable for the torts of policemen "engaged in the discharge of the duties imposed on them by law," is "exclusively part of sovereign immunity such that

---

[84]   ECF 40-1, at 15.

the purchase of liability insurance eliminates protection from suit." *Brienza v. City of Peachtree City*, 2021 WL 2930096, at *2 (N.D. Ga. June 8, 2021) (surveying cases).

## IV.     Conclusion

The City's motion to dismiss [ECF 40] is **GRANTED** as to the Section 1983 claim asserted in Count IV of the Second Amended Complaint, and **DENIED** as to the official capacity claim asserted in Count II. The Individual Defendants' motion for judgment on the pleadings [ECF 42] is **GRANTED** as to the individual capacity claim in Count II and the punitive damages claim in Count III of the Second Amended Complaint, and **DENIED** as to Count I.

**SO ORDERED** this 31st day of March, 2023.

Steven D. Grimberg
United States District Court Judge